And thank you to our guests, the Women's Leadership Institute and Columbia Law School. We're just going to wait for people to exit the room. You are losing your audience. I have my audience before me, Your Honor. Okay, Mr. Perez. Good morning, and may it please the Court. I want to highlight four omissions from the memorandum in order that rendered it in totality an abuse of discretion. Number one, throughout the trial, there were repeated references to the fact that the defendant would testify. And when the defense rested its case, the trial judge did not confirm with the defendant personally that she was waiving her right to testify. That fact is not in the memorandum in order. Number two, when the judge came out on the bench on Tuesday, July 9th, and was told by the lawyers there was a letter filed this morning by the defendant, the judge's response was, I didn't see it. And so that whole colloquy that's on the record on July 9th is without the judge having the benefit of seeing the defendant herself say, I told my lawyers I wanted to testify. They disagreed. They told me that you would, judge, give me the opportunity to decide if I wanted to testify and the chance to say yes or no. Number three, when the judge was speaking to Wafaa Abood about her decision to testify, he said to her at one point, it's your call. It's your decision. They can't decide that for you. And her response was very clear. Can I testify now, Your Honor? Can I testify now? And his response to her twice was, I don't think that's very smart. Judges do not say to defendants in a criminal case either that it's smart or not smart to testify. And number four, finally, when the judge was discussing this matter with Wafaa Abood and Abood was begging, she at one point used the word beg. Please help me. The judge said, you're not prepared to testify. You're not ready. The government's lawyers are going to cross-examine you, and they're good lawyers. And the person who was sitting next to her, her lawyer, one of two, who had spent six months preparing her to testify, who would three years later acknowledge in the hearing on the Rule 33 motion, I was ready to put her on the stand. Let her stand there and drown in her argument to this judge without correcting the judge's statement to her. You're not ready to testify. So let's go through those, actually. That's helpful. So there were references to the fact that the defendant would testify and the judge didn't check in. But we do have in the record her counsel saying she's deciding whether to testify or coming up with a final decision. Our recommendation is that she doesn't testify, but it's her decision. And so even if there were references to the fact that she might testify, wouldn't the judge have reasonably understood that it was worked out between her and counsel and she ended up taking counsel's advice? Your Honor, an ounce of prevention is worth a pound of cure. And that is why- You say that it's not the judge's obligation to check in with the defense counsel. It's for the lawyers to inform the defendant of her right to testify. That's right. But judges routinely confirm with the defendant, especially in a case in which the lawyers have repeatedly said to the judge, the defendant might testify, the judges look at the defendant and say, have you had this discussion? Do you understand you have this right? Are you waiving that right? And when that doesn't happen- Is that right or is it we're reviewing for clear error the district court's factual finding that Ms. Abboud agreed to not testify? It's an abuse of discretion standard, Judge Perez. And under the circumstances, given everything that was going on that morning, the judge abused his discretion by, among other things, substituting his judgment for the lawyers. When he said to her, I don't think that's very smart for you to testify. Because that was numbers sort of three and four, that she's not ready to testify, right? So it's true he could have reopened the evidence and had her testify right then. But he had just heard, based on this evidentiary hearing, that the lawyers were concerned that she was going to put on perjured testimony. And so they needed to prepare questioning that wouldn't elicit perjury. That was later, Judge. And she didn't trust her lawyers because she thought that they had bullied her, and so they were not really on her side, and she didn't trust them. And she would have just – he would have reopened the proceedings and put her on the stand with no preparation under all those circumstances. Wouldn't it be – if that had happened, couldn't you be here again saying that? That ensured there'd be an effective assistance of counsel because he had her testify at the spur of the moment without any preparation with lawyers that she said she didn't trust and that weren't on her side and with the possibility of perjury. There were two periods during which there were discussions between the judge and the defendant about her invocation of her desire to testify. It was July 9th, which was during the trial. And during that colloquy between the defendant and the judge, there were representations by her that she was unhappy with her lawyers for sure. Because the day before – first of all, for six months she was prepared to testify. Throughout the trial, they said to her repeatedly, we'll fix that when you testify. Because there were conversations about the way the evidence was coming in and their examinations that she went back to them and said, I have concerns. And they said, we'll fix it when you testify. And they wait and they wait and they wait. And then the night before she's supposed to testify, she goes to their office. And if you look at the post-it – and I'm sure the courts looked at the post-it – at 11 o'clock, she's 100 percent certain she wants to testify. And then 45 minutes later, according to the lawyers, she's decided that she's not going to testify except, number one, if you're certain that she's waived her right to testify, you don't put a question mark on the post-it. Number two, as we pointed out in our reply brief, it was a waypoint. Which way does that cut? I mean, if they put the question mark on the post-it, isn't it the lawyers recognizing that it is her right? And if she changes her mind tomorrow, we're going to respect her decision to testify. And so they were not, in fact, preventing her from testifying. Yes. Everybody agrees. Schmidt testifies and Abood testifies. And Abood puts this in her letter too. I was told that the next day the judge will ask me if you want to testify. And that moment never came. So she's sitting there waiting for the judge to turn to her and say, do you want to testify? And it doesn't happen. But Mr. Hart has an evidentiary hearing on that, right? And he says that he doesn't think that she could have believed that that was going to happen and that's what her right to testify hinged upon, right? Well, the judge actually omits much of that colloquy from the memorandum in order, including the fact that the judge himself did not ask the defendant if she wanted to testify. So was the actual mistake made here is that the attorneys didn't inform her of the deadline by which she needed to make a final decision? There's another aspect to this. During the summations, the actual mistake, and I appreciate the question, Your Honor, because I've grappled with this throughout the appeal. When was the mistake? The mistake I would submit was when Abood leaned over to Bernstein during Schmidt's summation and said, I want to testify. And Bernstein sat on that information. He didn't withhold it just from the district judge. He withheld it from Schmidt as well. So he hadn't jumped up in the middle of the summation and say, my client wants to testify? Of course not. But there was a break between when Schmidt finished his summation and when the government presented its rebuttal. At least some of the factual findings of the district court, it sounds like the defendant wavered on whether to testify. Why couldn't the lawyer have thought this was part of that pattern where she was like, oh, I need to testify? And then by the end when she's not insisting on it, by the time of the break, he thinks it was sort of a passing enthusiasm. That's why I framed it as a deadline. Like there was a deadline by which you needed to stop wavering and make your final call. And was the failure that you alleged, like the duty that was lapsed, the failing to tell her this was the drop dead deadline? She was told that. She was told the deadline is going to be tomorrow. That's what's in the second line of her letter. I was told the next day I would be given the chance to say yes or no. And so nobody asks her. The judge doesn't ask her if she wants to testify. And the lawyers don't ask the judge to ask her. And the government doesn't remind the judge to ask her. But that was discounting her expectation, right? That might be a different information. I'm trying to figure out, because you're arguing that we find Strickland. And so where was the lapse? No, I'm not arguing Strickland at all. Strickland has a whole prejudice prong, and the government, it's our position, has waived that prong. What should have happened is when the lawyers say to her, and this is Schmidt's testimony, not just her testimony. Schmidt was asked in the hearing, did you tell her that she would be asked the next day? And he says, I don't remember, but that's usually what I do. And, in fact, that's usually what happens at trials, especially when the lawyers say to the judge throughout the trial that the defendant might testify. You don't leave that question open, or if you do, here we are. Because they didn't nip that in the bud and give her that opportunity to say yes or no. It was clearly a heated, at times angry, it sounds like, discussion. She clearly knew at some earlier point. I'm sorry, Judge. At some earlier point, based on the post-it note and other back and forth between the lawyers and so on, it was clear that she knew she could have insisted on her right to testify earlier, right? Why would she? She could have consistently said, I want to testify, right? Why would she make that decision early? The Sunday was the final day before she was going to testify. That's the moment. Usually you plan out a trial, right?  So, like, you don't decide at the end of the trial whether you're going to testify or not.  And they had, for six months, Bernstein was brought into the case for the express purpose of preparing her. Well, that is a factual dispute, right? No, it is not. There was one way to read the record to say she kept going back and forth as to whether to testify, and another way that what your suggestion, which is she always expected to testify and thought at the end of the trial the judge would ask her, like, okay, do you want to get up and testify right now? Your Honor, it is not a factual dispute that she always wanted to testify. The only time the record suggests, the only source of questioning whether she would testify is coming from the defense lawyers who say when she came to the office the Sunday before, at 11 o'clock she was 100% certain she wanted to testify, and somehow, someway she got to 0% when she left. That's according to the defense lawyers. From her standpoint, she was always insistent. The testimony, her testimony and the testimony of the defense lawyers is both evidence, right? And so the district court took that testimony and decided what the facts are, right? Right. The district court did decide what the- So it is a factual dispute, right? It is a factual dispute except for the fact, and that's why I framed my comments today in terms of omissions in the decision and order. How do you resolve this motion without acknowledging that you yourself as the judge didn't ask her on the record if she wanted to testify? How do you resolve this kind of application without looking at her letter that she gave you the morning of? Well, the way the district court resolved it is he held a whole evidentiary hearing into whether she intended to testify and was prevented from testifying or she had made the decision not to testify, right? With all due respect, Your Honor, the way that he resolved it was he said to her, I don't think it's very smart for you to testify and you are not ready to testify. He told me that her lawyers were lying about her intention to testify and were intent on preventing her from doing so, and you're telling me that it was an error for the district judge not to put her immediately on the stand with those very same lawyers, the only ones looking out for her interests? I mean, wouldn't that have been an egregious mistake? I didn't say that the lawyers were lying. The lawyers clearly were mistaken about certain aspects. Bernstein definitely was mistaken about this allegation. Even though the lawyers didn't honor her, in your account, the lawyers didn't honor her desire to testify and were intent on preventing her from testifying, and yet the district court should have, at the drop of a hat, put her on the stand, but the only lawyers representing her, the ones who were so uninterested in her desire that they prevented her, they tried to prevent her from testifying in the first place. What my position is is that a district judge, when he's presented with a letter from a defendant who says, I want to testify and my lawyers said I could, I would be given that opportunity to ask you that the judge should at least account for that. The judge should look at the application. He didn't look at the letter that she gave him. Well, I mean, is that the point of the evidentiary hearing? He hears her account. He hears the lawyer's account. He does a whole inquiry into it. Isn't that the way he addressed it? That is, yes. So he did do that. He did do that three years later, yes. But, again, three years later, and to come back to the point that I was about to make, Bernstein's testimony has problems. Bernstein testified, among other things, that there was a sidebar with the judge about her not testifying. That's not in the record. That's not true. And Schmitt specifically said, I did not ask her. I assumed that if she wanted to testify, she would come into court and tell me that, and she didn't, and so I decided that she didn't want to testify. She's making all of these arguments herself, pro se. This woman who didn't grow up here, who didn't speak English as a first language, who's not a lawyer, in a well of all of these lawyers, these hype, Schmitt has been practicing law for almost 50 years. He, of all people, knows that if she wants to testify, it is her decision. And when the judge says to her, it's your decision, she says, fine, let me testify. And he says, no, it's not a good idea. And the government has really good lawyers. Do you disagree that if a defendant wants to testify and it really is a bad idea, the lawyers should advise her against it if they think that it will undermine her interests, right? That is the law. So there should, especially when there is the possibility of perjured testimony, which the lawyers here thought there was, the lawyers actually have an obligation not to elicit the perjured testimony, right? Yes. Okay. So there's going to be some back and forth between the client and the lawyers, right?  So it could be that when the defendant says I want to testify, you say, all right, we'll put you on the stand. Like there's going to be some discussion about whether it's a good idea or not. But, Judge, the premise of your question suggests that there was some open issue as to whether she was going to testify all along. And my point is there wasn't. Bernstein was hired. Bernstein testified that he – Well, it is more profound that there was, right? So let's talk about that. So what is the standard of review by which we evaluate those factual findings? And abuse of discretion. That is the standard on a Rule 33 motion. As a factual finding, we don't decide whether it's clearly erroneous? As a factual finding, yes. As a – of course. On a factual determination, it's clearly erroneous. Okay. So we have this record where there's this communication between the lawyers, and the lawyers are saying, look, to the opposing counsel and to the judge, we are advising her not to testify. She might want to testify. She's going back and forth about it. We're going to keep you updated or whatever. Is it clearly erroneous to decide that there wasn't – that there was an open question as to whether she had made an ultimate decision to testify? I don't mean to be repetitive. She wasn't going back and forth about it. I'm sorry, what? She wasn't going back and forth about it. But that is contrary to the district court's finding, right? Your statement that she wasn't going back and forth. Again, the district – So tell me actually what in the record compels the conclusion that allows me to say the district court's finding was clearly erroneous that she was going back and forth. The district court would – in order for the district court's decision to be upheld, the district court would have had to acknowledge that the day of, she gave the court a letter saying, I left off my lawyers, and my lawyers said you were going to ask me if I wanted to testify, and you didn't. That's not in the memorandum in order. That is what – and that's a factual – that's not just a factual finding. That's an omission, which is obviously a fact. In addition to the fact that what the judge did instead of – So you're suggesting the district court overlooked that. Yes. But we do have in the record the district court saying I don't find it credible that you were just waiting for the moment for me to ask you to testify because you're a sophisticated person, you haven't been shy about insisting on your right to testify and so on.  So he does make a finding. Yes, and it was clearly – That was not what happened. And it was clearly erroneous, and it was clearly erroneous because he didn't take into account the four omissions that I started out with. Okay. Thank you, Mr. Perez. Thank you. We have time for a rebuttal, so we'll hear from you again, but let's turn to the appellee, Mr. Buford. Good morning, Your Honors, and may it please the Court. My name is Turner Buford, and I represent the United States on this appeal as well as in the proceedings before the district court. Your Honors, the defendant in this case raised a serious concern, and that concern received serious attention from the district court. Upon learning of the complaint, the judge appointed new counsel for the defendant and conducted a full evidentiary hearing at which the judge heard testimony from the defendant herself as well as the two attorneys. The court ultimately made a factual finding that the defendant's claim that her will to testify had been overborne was unsubstantiated, and the record here we submit provides no reason for this court to disturb what was in essence a credibility determination made by the district court. Okay. If her lawyers didn't tell her a deadline for making a final decision, would that have been constitutionally ineffective? I... I'm not sure I understand the question, Your Honor. I'm sorry. I mean, it seems to me that some of what was going on was a belief of the back and forth, changing their minds, someone trying to persuade her, her not deciding. So if we decide that to understand the issue is she didn't know when she needed to just decide, and they didn't tell her that, would that be ineffective? I think if there was some genuine confusion on the part of the defendant as to when the right had to be asserted, but I don't think there's anything like that in this case. Okay, so you're saying, but if there was genuine confusion, then it would have been constitutionally ineffective to not say this is the date by which you have to decide. I think that may be right, Your Honor, but again, I think that's somewhat artificial given how this played out in real time, which is that... I mean, it's got to be right. We say it's ineffective if you don't inform the client of her right to testify. So if the lawyers basically tricked her into thinking there would come a moment when the district judge was going to say, would you like to testify, and that's when she had to make a decision, and that's how you exercise your right, and that's not true, it's got to be ineffective, right? That's the tantamount to not informing her of her right to testify, right? I think that's right, Your Honor, but I think we're very far removed from a scenario here where there's some issue that misinterprets... Well, we're not that far removed because she claims that that's what happened. I mean, I agree with you. The district court decided that that's not what happened, but she thinks it is, right? So if it were correct, that would be ineffective assistance of counsel, wouldn't it be? Well, again, I think what happened here was the defense rested its... He's asking abstractly if that is what happened, would that be ineffective? And I believe you've answered that. If the defense lawyers allowed the defendant to persist in a confusion as to when she had to assert the right, that would arguably be ineffective, such that she was misled into believing that in the middle of defense summation she could still assert the right to testify. Now, Mr. Perez says that the district court left out of the memorandum of opinion and order this idea that she thought she was going to have the opportunity to decide whether to testify. Is that a problem? I don't think the judge left it out, Your Honor. I think he said, I don't believe that the defendants, even if the lawyers had told her, there may come a time when I will address you directly as to whether you want to testify. He said, I don't believe the defendant's testimony, that misconception prevented her from speaking up as the defense rested its case without her testimony. So I do think that issue is addressed in the district court's memorandum. And I would also point out that one of the omissions, or at least a couple of the omissions, I don't think are factually supported. So in the transcript at page appendix at A99, the issue of the letter that Ms. Abood filed overnight comes up. The district court initially says, I didn't see it. The government attorney says, we saw it. And then the next question from the court is, did you discuss with your client the issue of admitting her guilt for the mortgage fraud count? I submit to the court what happened in between those questions is Judge Corman reviewed the defendant's letter. I would also point out, because prior to that statement by the judge, there's no discussion whatsoever of what the issue was. And yet the court goes right to the heart of the matter in his next question. And that's because in between, he was reading the letter. And I would also point out at the appendix A233, at the bottom of the page, Judge Corman in his memorandum says, on the morning of July 9th, I received a letter from Abood. And the letter claimed these things. So Judge Corman was well aware of the letter. That's what prompted his colloquy with the defense attorneys, who informed the judge in that moment that they had had this discussion with the defense attorney, with the defendant herself, the day before, and that she had agreed that she would not testify with their advice. Okay, so, you know, you're saying, well, the district court did this evidentiary hearing and so on. But here is the defendant saying, I would like to testify. Can I testify now? And he says, no. Why isn't that a mistake? I mean, if you're there, the trial's not over. You could open the evidence and allow her to testify. She's saying at that moment that that's what she wants to do. Why shouldn't the district court have honored that request? I think in that moment, though, the judge was presented with a factual dispute because her attorneys had just informed the court she had agreed not to testify. That was her conscious – Yeah, but she can change her mind, right? Well, she can, Your Honor, but I think we're on common ground that if what happened here was simply a change of heart, the district court was within its discretion or the better course is to say, no, it's too late. It's unfair to the government and to the truth-seeking purpose of the trial to allow the defendant to hear summations. There's other considerations about trial management and so on. And that's not her abuse of discretion as opposed to clearly erroneous. I think that's abuse of discretion, and that's the Crawford case, which is that only in the most extraordinary circumstances should the court allow new evidence to come in after the evidentiary presentation has closed. And in this case, the defendant would have had the benefit of hearing the entire government summation as well as the defense summation as an aid to her testimony. So a situation in which the defendant elects voluntarily and intelligently not to testify, doesn't like how summations came in, and then says after the fact – So you're saying the district court at that moment said, okay, she's claiming that she always wanted to testify and is being denied that opportunity, but the lawyers are saying she decided not to testify and this is a last-minute decision to reopen the evidence. And so that's a dispute. And so therefore, if she is a last-minute decision, it would be bad to open up the evidence. I'm not going to do that. But I will allow you to move to set aside the verdict if it turns out you were overpowering. I think that's exactly right, Your Honor. And I think that was the wisest course under the circumstances. I just want to say a couple of things about what the comments the defense – I mean, that Judge Corman made upon hearing this colloquy with the defense attorneys. That colloquy took place after the defendant herself had directly addressed the court and accused her attorneys not just of denying her right to testify, but of thoroughly mismanaging the entire case, saying that she wanted to dismiss them and represent herself going forward. I think in that context is how Judge Corman's comments should be read about whether it would make sense for her to testify now. He says you can't sort of get on the stand and make a statement yourself to the extent you're asking to go pro se. He didn't think that would be a wise thing to do at that moment. He also says that it became clear, I think, from the back and forth with the defendant, that she registered an objection to the defense attorneys having effectively conceded guilt to the bank fraud count. It became apparent that if the defendant were to testify, she would effectively retract that concession in all likelihood, such that the jury would be presented with this inconsistent view of the case which, again, I think to a question that was raised earlier, would probably not have solved the ineffective assistance of counsel problem if she'd been allowed to testify under those circumstances. I also think that what Judge Corman says, and again, it's not perfectly articulated. Is there a concern that she would be committing perjury? I mean, her lawyers seem to think that she wanted to introduce perjurous testimony in what she planned to say. I think that concern emerged only later at the evidentiary hearing when the court had a more fulsome... So at that moment, he wouldn't have known about that. He wouldn't have known about that, but I think he would have known that the lawyers had made the tactical decision to effectively concede guilt to the bank fraud count. The defendant says, I didn't want to... He would have been aware that there was a contradiction, and maybe as the person who had seen the evidence, he might have inferred that there's a possibility of perjury. I don't know, but that would be in his mind. But he hadn't heard that from the lawyers. But he would have seen that putting her on the stand, she's in an emotional state, she doesn't trust her lawyers, she might dismiss them, and there would be a contradiction in the defense theory presented to the jury. I think that's right, and I think that the judge also says, if he were to testify at one point, it would probably have to be with new attorneys, and obviously those new attorneys wouldn't have had an opportunity to prepare her in a timely way to testify at the trial. I also want to say, the evidentiary record from the hearing where the attorneys testified, I think, makes clear that they had always considered the possibility that the defendant would testify, and had made preparations for her to possibly take the stand. But both attorneys, in their testimony, are clear that as the trial began, and the evidence began to come in, both attorneys believed very quickly it would not be in the defendant's best interest to testify, and they had those discussions with the defendant on a regular basis. But which way does that cut? I mean, doesn't that support the idea that maybe they were intent on preventing her from testifying? Well, no, Your Honor, I think they were recommending to her that she not testify, and Mr. Bernstein testifies that he would run through some Q&A with her during the trial to give her a flavor of what she might expect if she were to make the decision contrary to their advice. And then I would also point out, I realize that... What about the post-it note? Doesn't it suggest that they weren't really taking her seriously and kind of were treating her as kind of an afterthought, her own desires? I don't think so, Your Honor. I recognize that it's a casual way to convey the information, but one point on that is, if you note, the post-it note comes in or begins with a 0% or very low chance of testifying, then goes up, then comes back down. So it's not a situation in which the lawyers were saying she was adamantly prepared to testify or wanted to testify from the very beginning. But again, I... I agree with that. As I pointed out to Mr. Perez, the actual post-it note seems to suggest she went back and forth and that they were open to her changing her mind again. But overall, the impression given by the post-it note is that the lawyers were not that solicitous of her particular desires. I wouldn't go that far, Your Honor. I think what they're saying is we respect her right to testify if that is her ultimate decision. And that was why they were telling the government she could still change her mind and take the stand the next day. I would also point out Mr. Bernstein testifies that he specifically spoke with Ms. Abood the morning after that Sunday meeting and confirmed that she had not changed her mind and that she still agreed not to testify. Can I ask just maybe a small question? So if, in fact, she was prevented from testifying even though she wanted to, would that be a structural error or a harmless error? Or do we regard it as a harmless error? I think it depends on when it happens, Your Honor. I think if she is... if her will to testify is effectively overborne at the moment where she has to make the decision, meaning the defense is going to rest, I think, although this court has never squarely decided it, in light of McCoy, we, the government, would be hard-pressed to say that there's a... So we have McCoy where the Supreme Court tells us that not getting your client's consent to admit guilt on certain counts, that's a structural error because the client might want to, you know, sacrifice the likelihood of success because he doesn't want to admit guilt. But we have our own case, Brown, which says that if the lawyers don't adequately inform the client of the right to testify, we do review that for harmless error. Like, we do a prejudice analysis in Brown. We say, like, it wouldn't have made a difference if the client had gotten up on the stand and testified. So is this case closer to not informing a client of the right to testify or to not getting the client's permission to concede guilt on a count? I think, in light of all the precedents, because of McCoy's decision that it's a personal right, and Brown uses that same language... Well, Brown also said it was a personal right. That's not new. I know, but McCoy says once you've established that it falls in this category of personal rights, you don't have to go further into the prejudice requirement. And given that this right is sort of as important as the right to squarely oppose a concession to guilt, I think, again, we'd be hard-pressed to say that McCoy doesn't mean the second... But you're persuaded it is as important. I'm sorry? So you're persuaded that it is as important. It's not different. I think at the moment... Conceding guilt, it's not obvious that speaking up in your own defense is as important as actually conceding guilt on a count. I mean, that seems more consequential. Again, Your Honor, I don't know that we necessarily have to take a firm position on it, but again... No, because that's why I said I'm not sure it's dispositive, but I'm interested in it. Like, if we had a case that was just like Brown, it was about whether the lawyers adequately informed the client of her right to testify. You're saying we should treat Brown as partially abrogated? We shouldn't do the prejudice analysis we did in Brown? I think the court would have to reckon with McCoy's holding. I'm interested in it. But I will say I think the analysis is different, as we say in our brief, if the question is, was counsel ineffective somehow in insufficiently vigorously advocating for their client who decides belatedly that they want to testify. Well, right, but that's again why I have been thinking about it, which is in terms of, like, the deadline. Like, the deadline by which they have to decide. Does it matter why she wanted to testify? Because it would seem to me that if what she was trying to do was to vindicate her fundamental right to present it in her own terms, that would be different than if she were trying to rebut evidence. Because it seems to me if she were to rebut evidence or increase her odds of acquittal, then that's where we start getting into whether or not it would have had a reasonable probability of success. But if instead it was to present her version in her own words, then maybe we've got more, or she's got more of a claim. Again, I think it's less about the substance of the testimony and more about when the decision is made. Because I think if she timely registers with her attorneys, I've heard your advice, I nonetheless decide I want to testify, and we're going to do it before the defense rests. At that point, apart from concerns about possibly supporting perjury, I think the attorneys have to respect her choice, regardless of whether it's to tell her a version of events or to rebut certain pieces of evidence. I think after the deadline passes and we're on the other side of summations... Then it becomes a docket management. Then I think it becomes an abuse of discretion standard, and whether in light of what decisions had been made, both in summation as well as not to testify previously, is it fair to reopen the case at that point in time. Okay, so would we need... If we thought that she had not been informed of her, the final deadline, would we need to vacate and remand to see if she would have testified but her attorney's failure to inform her of the dropped deadline? If the court were to so conclude, but I don't think that conclusion is justified on this record because I think the attorneys clearly explained to her, tomorrow is the last day of trial. We are going to rest our case. She agreed not to testify, and with that understanding on the part of the attorneys, the fact that the colloquy from the district court, which this court has said is not advised or not recommended in any case, didn't occur, the attorneys would have had no reason to go back to her. In that frame, is the district court improperly placing a burden on her to know when she has to assert it before it's too late? I don't think so, Your Honor. Again, I think safeguarding the right is entrusted to defense counsel, not the district court, and here I think the defense counsel plainly explained to her it was her decision to testify, and I point out a point we made in our brief. The defense case closed in a very deliberate way. They called two witnesses. The district court said, do you have any more witnesses? The defense lawyer said, no, we have no more witnesses. There was an hour lunch break. The defense put in some stipulations after the break and then formally rested their case. The government began its summation, which I can represent was in excess of 90 minutes. That concluded, the defense began their summation, and only at that point in time did the defendant say to her attorney, I want to testify. I think the strong inference is the defendant was unhappy with how summations had been going and elected to change her mind rather than her will having been overborne, and the fact that she was able to, by the way the defendant's testimony is she said nothing to either attorney the entire day, went home and wrote the letter. It's only Bernstein who says the defendant interrupted the summation to tell me she wanted to testify, and so the defendant was clearly capable of speaking with her attorneys, asking questions, and as we put out in our briefs, she was about a year removed from being a defendant in a state court criminal trial that played out in a similar fashion. So she was well aware of how the process works and the record supports the conclusion made by the district court. She decided voluntarily and intelligently not to testify. Okay, thank you very much. We'll turn back to Mr. Perez-Amraban. I would direct the court's respectfully attention to page 187 of the appendix, our appendix, lines 19 to 24. This is the examination of Schmidt, the direct examination, the government's examination of Schmidt. What was your understanding of her decision at the end of that weekend about whether to testify?  When we parted, she agreed with our position that she should not testify. Question. Did you understand that to be the last word on the matter? Answer. The last word would be on Monday when we appeared in court. So to the extent that the district court concluded as a factual matter that she wavered or that she decided conclusively on Sunday that she would not testify, it is clearly erroneous, because not only does she say, I was waiting for the judge to ask me if I wanted to testify, but Schmidt says last word was going to be on Monday. With respect to the overall dynamic between Schmidt. What's the account of the lawyers? Was that that morning she didn't want to testify, but then she said during the summation that she did want to testify, and then she didn't bring it up again for the rest of the day, right? Unfortunately, the lawyers are not exactly aligned, because Schmidt is clear that he essentially ignored her that morning and waited for her to tell him that she changed his mind. That's what he testified to. Bernstein says, I know I, this was three years later, I know I asked her and I know she said she didn't want to testify. But this is the same lawyer, Bernstein, who didn't tell anybody on Tuesday, July 9th, that she had leaned over to him during Schmidt's summation and said I want to testify. And she's waiting this whole time. I understand that there's picking and choosing some testimony here, but like a plausible account would be at the end of the weekend she didn't want to testify, but then she was going to make a final decision on Monday. She didn't come into court on Monday saying I want to testify, and so maybe the lawyers assumed she was adhering to the decision not to testify. Schmidt did. Schmidt did. But then during the summation she says I do want to testify. The lawyer says, well, let's see how this goes. Then she doesn't bring it up again. What you're saying is bad comment on the part of the lawyers, but the district court might have inferred and seems to have inferred that it just meant that the lawyers thought that it was her wavering again. But that would be the account, right? Right. Right. With respect to the dynamic between Abood and her lawyers, I would direct the court to Schmidt's testimony about the concession, that she was guilty. Actually used the word guilty and said she should be punished for that. He says by his account he didn't ask her if that was okay. She didn't agree that that was okay. His words, page 183, I can't say that I would have asked her the specific question, do you agree that we can admit those offenses? I would more likely have explained it in a manner that this is what we're going to do. We think this is the best way of handling it. So the dynamic between these lawyers and this defendant was not reading her in on her rights and saying, what do you want to do, Wafa? The district court decided that she did agree to concede on the mortgage fraud count. Are you challenging that determination? Yes. Yes. That's not the appeal. But as a factual matter, Schmidt himself says I didn't ask her, I told her this was what we were going to do. Finally, with respect to Brown, and I appreciate your Honor's questions to the government about Brown, I do believe that McCoy at least partially abrogates Brown because Brown obviously was well before McCoy. It was before, but it's also a different fact pattern. No doubt. McCoy is about getting the client's consent to concede guilt on a count and Brown is about informing the client of the right to testify. It's not obvious that you couldn't have harmless error for one and structural error for the other. It is an open question. Okay. Thank you very much, Mr. Perez. The case is submitted.